UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

IN RE COMBINED WORLD TRADE CENTER  :     **21 MC 103 (AKH)**
AND LOWER MANHATTAN DISASTER SITE  :
LITIGATION (straddler plaintiffs)  :

------------------------------------------------------ x

MARIA LAZO,                        :

           Plaintiff,              :     **COMPLAINT**
                                   :
   - against-                      :     **Civil Action No. : 07 CIV 6414**
                                   :     **JUDGE HELLERSTEIN**
                                   :
THE CITY OF NEW YORK, 2 BROADWAY LLC,:    PLAINTIFF DEMANDS
COLLIERS ABR. INC., BROOKFIELD     :     A TRIAL BY JURY
FINANCIAL PROPERTIES, L.P., BFP ONE :
LIBERTY PLAZA CO. LLC, BLACKMON-   :
MOORING-STEAMATIC CATASTROPHE, INC. ,:
HILLMAN ENVIRONMENTAL GROUP, LLC,  :
DEUTSCHE BANK TRUST CORPORATION,   :
DEUTSCHE BANK TRUST COMPANY,       :
BANKERS TRUST CORPORATION,         :
DEUTSCHE BANK  TRUST COMPANY       :
AMERICAS, THE BANK OF NEW YORK     :
TRUST COMPANY NA, BT PRIVATE CLIENTS :
CORP., TISHMAN INTERIORS CORPORATION,:
TULLY CONSTRUCTION CO., INC., TULLY :
INDUSTRIES, BATTERY PARK CITY      :
AUTHORITY and WFP TOWER A. CO, .L.P., :
                                   :
         Defendants.               :

------------------------------------------------------------x

      Plaintiff(s), Maria Lazo, by her attorneys. OSHMAN & MIRISOLA, LLP, complaining

of defendants respectfully alleges:

      Plaintiff, Maria Lazo, a citizen of New Jersey, residing at 312 27th Street, Apartment 2,

Union City, NJ 07087, brings this action against Defendants seeking redress for injuries suffered

in the past, and will continue to suffer, as a result of participation in the vicinity of World Trade

Center site in the aftermath of September 11, 2001.

## I. DEFINITIONS

The following definitions are employed for the purposes of this Complaint, and any subsequent Complaints filed hereunder, unless otherwise specified:

1.      "Operations" includes cleaning, debris removal, carting, excavation and abatement of hazardous substances performed in and/or around the World Trade Center site.

2.      "Work" includes all activities undertaken by Plaintiff as part of Plaintiff's operations at Plaintiff's work locations in and/or around the World Trade Center site.

3.      "Hazardous substances" include but are not limited to, substances that have toxic, carcinogenic, teratogenic, and mutagenic effects on bodily systems.  Hazardous substances present at Plaintiff's work locations were and are in the form of dust, fumes, particulate matter, vapors, gases, mists, fibers and liquids. The specific hazardous substances Plaintiff was exposed to include, but are not limited to, asbestos, fiberglass, crushed glass, silica, pulverized concrete, lead, mercury, cadmium, chromium, beryllium, iron, aluminum and other heavy metals, poly chlorinated biphenyls (PCBs), dioxin compounds, furons, Freon compounds, poly cyclical aromatic hydrocarbons (PAHs), benzene and other volatile organic compounds, arsenic, sulfur, acidic aerosols, and other toxic substances and hazardous decomposition by-products.

## II. INTRODUCTION

4.      Upon the collapse of the Twin Towers and Seven World Trade Center, known and unknown toxic substances were spread throughout the World Trade Center Site and the surrounding areas, portions of which, were owned, operated, maintained, controlled, supervised, and/or managed by the Defendant(s). Those areas remained dangerous, defective, hazardous, toxic, unguarded, unsupervised, and unprotected for multiple days, weeks, and/or months thereafter.  Plaintiff participated in debris removal and/or, hazardous substance abatement, and/or

cleaning of buildings in the immediate vicinity of the World Trade Center Site over two years, beginning on or about September 13, 2001.

5.      The nature of this action is to recover money damages for the personal injuries sustained by the Plaintiff as a result of the carelessness, recklessness and negligence of Defendant(s) in failing to provide the Plaintiff with a safe place to work in failing to provide the Plaintiff with proper, appropriate, and legally required respiratory protection, personal protective equipment, decontamination equipment and procedures, and training to prevent exposure to hazardous substances at plaintiff's work locations.

6.      Plaintiff also seeks recovery for the Defendant(s)' failure to provide appropriate respiratory protection and appropriate protective clothing and equipment, and to properly monitor air quality and to notify the Plaintiff of the dangerous levels of toxins and contaminants in the air at the Work locations. Plaintiff also seeks recovery for the Defendant(s)' failure to comply with one or more of the following: the World Trade Center Environmental Health and Safety Plan(s); the Labor Law of the State of New York; the New York State Industrial Code; the requirements of the Occupational Safety & Health Administration; and other applicable federal, state and local statutes, law, rules, regulations and ordinances.

### III. JURISDICTION

7.      The United States District Court for the Southern District of New York has original jurisdiction over the Plaintiff's claims pursuant to §408(b)(1) of the Air Transportation Safety & System Stabilization Act of 2001, 49 U.S.C. §40101 ("the Act").

### IV. VENUE

8.      Pursuant to the Act, venue is proper in this judicial district.

**V. PARTIES**

**THE PLAINTIFF(S)**

9.        Plaintiff participated in the clean up, debris removal, hazardous substance abatement,

maintenance and/or repair work in vicinity of the World Trade Center Site at the locations

identified in Paragraph 11 beginning on or about September 13, 2001 through the week ending

September 17, 2001, plaintiff worked at 5 World Trade Center, New York, New York.

Beginning on or about the week ending September 24, 2001 through on or about the week

ending October 1, 2001, plaintiff worked at One Liberty Plaza, New York, New York. Beginning

on or about the week ending October 2, 2001 through on or about the week ending December 3,

2001, plaintiff worked at 200 Liberty Street, New York, New York. Beginning on or about the

week ending December 10, 2001 through on or about the week ending January 29, 2002, plaintiff

worked at 200 Liberty Street, New York, New York. Beginning on or about the week ending

February 4, 2002 through on or about the week ending April 22, 2002, claimant worked at 200

Liberty Street, New York, New York. Beginning on or about the week ending June 3, 2002

through on or about the week ending June 10, 2002 plaintiff worked at 2 Broadway, New York,

New York. Beginning on or about the week ending June 17, 2002 through on or about the week

ending June 27, 2002 plaintiff worked at 130 Liberty Street, New York, New York. Beginning

on or about the week ending July 2, 2002 through on or about the week ending July 3, 2002

plaintiff worked at 130 Liberty Street, New York, New York for a total of approximately 16

hours. Beginning on or about the week ending October 14, 2002 through on or about the week

ending December 29, 2002, plaintiff worked at 130 Liberty Street, New York, New York.

10.        During the aforesaid time periods, upon information and belief, plaintiff was employed

by PAL Environmental Safety Corp., Trade Winds Environmental, Abatement INTL/ ADATEX

and local union 78 as a handler/cleaner, within and/or outside the aforesaid addresses. Other

employer(s) and/or work location(s) may exist, but are presently unknown to plaintiff.

11.    Plaintiff sustained serious physical illnesses and injuries as a result of exposure to

hazardous substances during plaintiff's work at the work locations.

12.    Plaintiff's injuries are as a result of exposure to hazardous substances at the work

locations which include, but are not limited to, the following:

a) Respiratory Injuries: chronic rhinosinusitis; shortness of breath

b) Digestive Injuries: G.E.R.D.

c) Cardiopulmonary Injuries: N/A

d) Cancer Injuries: N/A

The foregoing is not an exhaustive list of injuries that may be alleged.

### THE DEFENDANT(S)

13.    Upon information and belief, at all relevant times, Defendant CITY OF NEW YORK,

was and is located at 100 Church Street 4th Floor, New York, NY 10007.

14.    Upon information and belief, at all relevant times, Defendant, 2 BROADWAY LLC, was

and is located at 384 5th Avenue, 4th Floor, New York, New York 10018.

15.    Upon information and belief, at all relevant times, Defendant, COLLIERS ABR, INC.,

was and is located at 40 E. 52nd Street, New York, New York 10022.

16.    Upon information and belief, at all relevant times, Defendant, BROOKFIELD

FINANCIAL PROPERTIES, L.P., was and is located at 3 World Financial Center, New York,

New York 10281.

17.    Upon information and belief, at all relevant times, Defendant, BFP ONE LIBERTY

PLAZA CO. LLC, was and is located at 3 World Financial Center, New York, New York 10281.

18.    Upon information and belief, at all relevant times, Defendant, BLACKMON-

MOORING- STEAMATIC CATASTROPHE, INC., was and is located at 303 Arthur Street,

Fort Worth, TX 76107 .

19.    Upon information and belief, at all relevant times, Defendant, HILLMAN

ENVIRONMENTAL GROUP, was and is located at 1600 Route 22 E, Union City, NJ 07087.

20.    Upon information and belief, at all relevant times, Defendant, DEUTSCHE BANK

TRUST CORPORATION, was and is located at 60 WALL ST, NEW YORK, New York 10005.

21.    Upon information and belief, at all relevant times, Defendant DEUTSCHE BANK

TRUST COMPANY, was and is located at 60 Wall Street, New York, New York 10005.

22.    Upon information and belief, at all relevant times, Defendant, BANKERS TRUST

CORPORATION, was and is located at 60 Wall Street, New York, NY 10005.

23.    Upon information and belief, at all relevant times, Defendant, Deutsche Bank Trust

Company Americas, was and is located at 60 Wall Street, New York, New York 10005.

24.    Upon information and belief, at all relevant times, Defendant, THE BANK OF NEW

YORK TRUST COMPANY NA, was and is located at One Wall Street, New York, New York

10286.

25.    Upon information and belief, at all relevant times, Defendant, BT PRIVATE CLIENTS

CORP., was and is located at 280 Park Ave, 6W, New York, New York.

26.    Upon information and belief, at all relevant times, Defendant, TISHMAN INTERIORS

CORPORATION, was and is located at 666 5th Avenue, New York, New York 10103.

27.    Upon information and belief, at all relevant times, Defendant, Tully Construction

Company, Inc, was and is located at 127-50 Northern Blvd., Flushing, New York 11368.

28.      Upon information and belief, at all relevant times, Defendant, Tully Industries, Inc., was

and is located at 127-50 Northern Blvd., Flushing, New York 11368.

29.      Upon information and belief, at all relevant times, Defendant, Battery Park City

Authority, was and is located at 1 World Financial Center, 24th floor, New York, New York.

30.      Upon information and belief, at all relevant times, Defendant, WFP Tower A Company

L.P., was and is located at c/o Brookfield Properties, 3 World Financial Center, New York, New

York 10281.

31.      The specific defendants alleged relationship to the property, as indicated below or as

otherwise the evidence may disclose, or their role with relationship to the work thereat, gives rise

to liability under the causes of action alleged herein. The defendants named below are listed by

reference to the building and/or location at which this specific plaintiff worked.

32.      With reference to the World Trade Center, the defendant CITY OF NEW YORK, was an

owner and/or agent and/or contractor at the subject property and/or in such relationship as the

evidence may disclose.

33.      At all times herein mentioned, Defendant CITY OF NEW YORK controlled the areas

surrounding the World Trade Center site, including the addressed referred to herein.

34.      With reference to 2 Broadway, New York, New York, the defendant 2 Broadway LLC

was an owner at the subject property and/or in such relationship as the evidence may disclose.

35.      With reference to 2 Broadway, New York, New York, the defendant COLLIERS ABR,

INC. was an owner at the subject property and/or in such relationship as the evidence may

disclose.

36.     With reference to One Liberty Plaza, New York, New York, the defendant
BROOKFIELD FINANCIAL PROPERTIES, L.P. was an owner at the subject property and/or
in such relationship as the evidence may disclose.

37.     With reference to One Liberty Plaza, New York, New York, the defendant BFP ONE
LIBERTY PLAZA CO., LLC was an owner at the subject property and/or in such relationship as
the evidence may disclose.

38.     With reference to One Liberty Plaza, New York, New York, the defendant BLCKMON-
MOORING-STEAMATIC CATASTROPHE, INC. was an agent and/or contractor at the subject
property and/or in such relationship as the evidence may disclose.

39.     With reference to One Liberty Plaza, New York, New York, the defendant HILLMAN
ENVIRONMENTAL GROUP, LLC was an agent and/or contractor at the subject property
and/or in such relationship as the evidence may disclose.

40.     With reference to 130 Liberty Street, New York, New York, the defendant DEUTSCHE
BANK TRUST CORPORATION was an owner at the subject property and/or in such
relationship as the evidence may disclose.

41.     With reference to 130 Liberty Street, New York, New York, the defendant DEUTSCHE
BANK TRUST COMPANY was an owner at the subject property and/or in such relationship as
the evidence may disclose.

42.     With reference to 130 Liberty Street, New York, New York, the defendant BANKERS
TRUST CORPORATION was an owner at the subject property and/or in such relationship as the
evidence may disclose.

43.    With reference to 130 Liberty Street, New York, New York, the defendant DEUTSCHE BANK TRUST COMPANY AMERICAS was an owner at the subject property and/or in such relationship as the evidence may disclose.

44.    With reference to 130 Liberty Street, New York, New York, the defendant THE BANK OF NEW YORK TRUST COMPANY NA was an owner at the subject property and/or in such relationship as the evidence may disclose.

45.    With reference to 130 Liberty Street, New York, New York, the defendant BT PRIVATE CLIENTS CORP. was an owner at the subject property and/or in such relationship as the evidence may disclose.

46.    With reference to 130 Liberty Street, New York, New York, the defendant TISHMAN INTERIORS CORPORATION was an agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

47.    With reference to 130 Liberty Street, New York, New York, the defendant TULLY CONSTRUCTION CO., INC. was an agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

48.    With reference to 130 Liberty Street, New York, New York, the defendant TULLY INDUSTRIES was an agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

49.    With reference to 200 Liberty Street, New York, New York, the defendant BATTERY PARK CITY AUTHORITY was an owner at the subject property and/or in such relationship as the evidence may disclose.

50.     With reference to 200 Liberty Street, New York, New York, the defendant

BROOKFIELD FINANCIAL PROPERTIES, L.P. was an owner at the subject property and/or

in such relationship as the evidence may disclose.

51.     With reference to 200 Liberty Street, New York, New York, the defendant WFP TOWER

A CO. L.P. was an owner at the subject property and/or in such relationship as the evidence may

disclose.

52.     With reference to 200 Liberty Street, New York, New York, the defendant BLCKMON-

MOORING-STEAMATIC CATASTROPHE, INC. was an owner at the subject property and/or

in such relationship as the evidence may disclose.

53.     After September 11, 2001, the Defendant(s) acted in its capacity as owner, agent, general

contractor, and/or subcontractor, and/or construction manager responsible for the demolition,

planning, reconstruction, renovation, debris removal, hazardous substance abatement and/or

alteration performed at the World Trade Center site and/or surrounding premises, including the

addresses listed hereinabove.

54.     After September 11, 2001, Defendant(s) employed their own employees, construction

companies, engineers, managers, contractors and subcontractors responsible for demolition,

construction, renovation, alteration, and all work performed at their respective buildings.

55.     An Order to Show Cause application to deem plaintiff's Notice of Claim timely filed, or

in the alternative to grant plaintiff leave to file a late Notice of Claim *Nunc Pro Tunc* was granted

as to the City of New York and is being filed as to defendant, Battery Park City Authority.

### VI . GENERAL ALLEGATIONS

56.     This case arises out of injuries the Plaintiff sustained while working at the Work

Location(s) in the aftermath of the terrorist attacks of September 11, 2001.

57.      An Order to Show Cause application to deem plaintiff's Notice of Claim timely filed, or

in the alternative to grant plaintiff leave to file a late Notice of Claim *Nunc Pro Tunc* has been

filed and a determination is pending.

### General Conditions At World Trade Center Site

58.      Before September 11, 2001, the buildings at the WTC generated large amounts of

hazardous waste, as defined by the Resource Conservation and Recovery Act (RCRA),

producing over 10,000 pounds of hazardous waste per year. The buildings contained thousands

of computers, fluorescent light fixtures, stored chemicals, underground and above ground storage

tanks holding tons of diesel fuel and fuel oil, electrical transformers laden with PCB-containing

oil, asbestos, and other hazardous substances.[1] Defendant(s) knew that the collapse of these

buildings would release these toxic substances, presenting a grave health risk to all who were

exposed.

59.      Following the collapse of the World Trade Center buildings on September 11, 2001, there

existed a dangerous, defective, hazardous, unguarded, unsupervised, unprotected, and unsafe

toxic condition at the World Trade Center Site and work locations.

60.      The air and the area in, around, on, and at the World Trade Center Site, including the

Plaintiff's work locations was polluted and contaminated with toxic hazardous substances.

61.      Workers were exposed to enormous quantities of toxic, carcinogenic, mutagenic, and

teratogenic hazardous substances, generated by the collapse of the WTC buildings and

---

[1]   See Burton Transcript., at pp. 49-51.

smoldering fires that lasted more than three months, reaching temperatures as high as 1800 was and is a duly organized Fahrenheit.[2]

62.     The ongoing fires burning at the World Trade Center Site produced a mixture of toxic gases and ultra-fine particulates.  Air samples taken from a rooftop one mile north of the World Trade Center Site showed "unprecedented ambient levels" of fine particulate matter, sulfur, acidic aerosols, heavy metals, and other dangerous compounds.[3]

63.     The levels and types of human exposures resulting from this mixture of materials, dust, toxins, and a smoldering fire that lasted more than three months and reached temperatures as high 1800 was and is a duly organized Fahrenheit was unprecedented.[4]  Dust and vapors blanketed work site, as well as, the entire area surrounding the World Trade Center Site, including work locations. The ongoing fires burning at the World Trade Center Site produced a mixture of toxic gases and ultra-fine particulates that had never before been seen.  Air samples taken from a rooftop one mile north of the World Trade Center Site showed "unprecedented ambient levels" of fine particulate matter, sulfur, acidic aerosols, heavy metals, and other dangerous compounds.[5]

---

[2] Paul J. Lioy, "Characterization of the Dust/Smoke Aerosol that Settled East of the World Trade Center in Lower Manhattan After the Collapse of the WTC 11 September, 2001, "Envtl. Health Perspectives 110(7):703-14 (July 2002), p. 703.

[3] Thomas Cahill, et al., "Analysis of Aerosols from the World Trade Center Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies," New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

[4] Paul J. Lioy, "Characterization of the Dust/Smoke Aerosol that Settled East of the World Trade Center in Lower Manhattan After the Collapse of the WTC 11 September, 2001, "Envtl. Health Perspectives 110(7):703-14 (July 2002), p. 703.

[5] Thomas Cahill, et al., "Analysis of Aerosols from the World Trade Center Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies," New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

64.     The Defendant(s), through employees, representatives, agents, contractors, and other entities, knew that protection from hazardous substances was necessary at Plaintiff's work locations.[6]

65.     The official Report of the City Council Committee on Environmental Protection acknowledged: "In the weeks following the collapse of the Twin Towers, significant quantities of smoke, dust, asbestos, silica, dioxins, polychlorinated biphenyls (PCBs), lead, mercury, cadmium and other heavy metals, furans, volatile organic compounds, polycyclical aromatic hydrocarbons, benzene[7] and various other potentially hazardous substances were released into the air."[8]

66.     Upon information and belief, the Defendant(s) knew that exposure to these harmful substances could cause a plethora of health problems for the WTC workers and workers at the addresses listed hereinabove.

67.     Upon information and belief, the Defendant(s) were aware that exposure to carbon monoxide could cause chronic angina and cardiac dysfunction.

68.     Upon information and belief, the Defendant(s) were aware that exposure to chromium metal and insoluble salts could cause chronic nasal septum perfection, liver and kidney damage, as well as cancer.

---

[6] On September 21, 2001 and October 19, 2001, the City DOH, through the Commissioner of Health, issued two orders. These orders established controls on building use by City personnel and mandated specific protective actions be taken when persons and vehicles left the WTC Site: "It is hereby ordered that all persons leaving the WTC site shall follow personal hygiene protocols, including but not limited to...removal or HEPA vacuuming of work clothes...washed...SeeCITYCM3-00026317-18 and 00041996-97; It is further ordered that all vehicles leaving the WTC site be spray City DOH Orders of 10/19/01 and 9/21/01. Notably, these protocols were NOT followed or enforced.

[7] See OSHA-NY00045060: "Air samples taken within the plume have contained high mixtures, at times, of compounds like benzene, which has been linked - for long term exposures - to anemia and leukemia."

[8] See CITY CM3-000025293: Air Quality and Environmental Impacts Due to the WTC Disaster, December 2001.

69.     Upon information and belief, the Defendant(s) were aware that exposure to Crystalline

Silica (as respirable dust) could cause progressive respiratory symptoms, silicosis and cancer.

70.     Upon information and belief, the Defendant(s) were aware that exposure to Freon (R-22)

could cause cardiac arrhythmia, cardiac arrest and asphyxiation.

71.     Upon information and belief, the Defendant(s) were aware that exposure to Lead

(metallic and inorganic) is linked to decreases in muscle strength, abdominal pain, severe

constipation, nausea, vomiting, paralysis of the wrist joint, kidney damage and nervous system

disorders.

72.     Upon information and belief, the Defendant(s) were aware that exposure to mercury

compounds could cause pneumonitis, tremor and gastrointestinal distress.

73.     Upon information and belief, the Defendant(s) were aware that exposure to PCBs could

cause chemical acne, black heads, dark patches on skin, liver damage, digestive disturbances,

impairment of the immune system and cancer.

74.     Information as to the hazardous conditions present at Plaintiff's work locations and the

toxic exposures were never communicated to workers or to treating physicians.[9]

75.     From the time of the collapse of the buildings on September 11, 2001, and continuously

thereafter, the Defendant(s) were aware of the danger posed to Plaintiff and all others lawfully

present at the work locations by exposure to toxins, hazardous substances, particulate matter and

contaminants in the air and on surfaces.

76.     The ongoing fires burning at the WTC Site produced a mixture of toxic gases, fumes,

vapors and ultra-fine particulates. Indeed, air samples taken from a rooftop one mile north of the

_____

[9] See February 21, 2002 EPA National Ombudsman First Investigative Hearing on WTC Hazardous Waste
Contamination. Experts and private citizens testified that the federal government, state government and city
government had (1) not been operating in compliance with the laws of the United States, and (2) had been providing
the public, firemen and police officers with erroneous information.

WTC Site demonstrated "unprecedented ambient levels" of fine particulate matter, sulfur, acidic

aerosols, heavy metals, and other dangerous compounds.[10]

77.    Shortly after September 11, 2001, tests conducted by the United States Geological Survey

("USGS") determined that the dust at the WTC Site was highly caustic, with a demonstrated

capacity of burning tissue in the throat, eyes, and nasal passages. The dust was determined to

have a pH value of 9.0 to 11.0, indicating that the dust was highly alkaline and comparable to

ammonia. Some of the dust samples taken by the USGS on September 17-18, 2001, registered

higher than 11.0 on the pH scale—this level was as caustic as liquid drain cleaners.[11]

78.    Days after September 11, 2001, the New York Environmental Law & Justice Project sent

dust samples from several lower Manhattan locations to two respected laboratories. One such

sample showed a 90% fiberglass content.[12]  Fiberglass consists of glass fibers that are small

enough to be inhaled and cause respiratory irritation in humans and fibrosis (a scaring or

thickening of tissues deep in the lung, impairing respiration) in animals. Glass fibers are also

highly irritating to the eyes.

79.    The New York City Department of Environmental Protection ("NYDEP") conducted

numerous tests that determined that the air and World Trade Center Site was contaminated and

polluted with the aforementioned toxic Dust.

---

[10] See Thomas Cahill, et al., "Analysis of Aerosols from the WTC Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies", New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

[11] See Clark, et al., "Environmental Studies of the WTC Area After the September 11, 2001 Attack" (USGS Open File Report OFR-01-0129) (http://pubs.usgs.gov/of/2001/ofr-01-0429/>), p.4; Philip Landrigan, M.D., et al., "Heath and Environmental Consequences of the WTC Disaster, "Envtl Health Perspectives 112(6):73139, 732 (May 2004), at p.16.

[12] Juan Gonzalez, "Health Hazards in Air Worry Trade Center Workers," Daily News (September 28, 2001); Juan Gonzalez, Fallout., p. 6. The sample was taken at the corner of Church and Vesey Streets, at the northeast corner of the WTC Site.

80.      Shortly after September 11, 2001, tests conducted by the United States Geological Survey

"USGS") determined that the dust at the World Trade Center Site was highly caustic and thus

capable of burning moist tissue in the throat, eyes, and nasal passage. This dust was determined

to have a pH value of 9.0 to 11.0, indicating that the dust was highly alkaline and comparable to

ammonia. Some of the dust samples taken by the USGS on September 17-18, 2001, registered

higher than 11.0 on the pH scale—as caustic as liquid drain cleaners.[13]

### Lack of Worker Safety

81.      The Defendant(s), their employees, representatives, agents, and/or contractors failed to

provide Plaintiff with a safe and healthy work place, the required personal protective equipment,

including respiratory protection, chemical impervious clothing, decontamination facilities,

hazardous materials training, respiratory fit testing and proper medical surveillance.

82.      The Defendant(s), their employees, representatives, agents, and/or contractors failed to

perform the required atmospheric monitoring in and around the WTC site and Plaintiff's work

locations.  Any atmospheric monitoring performed by the Defendant(s) was inadequate to

identify the true extent of the risk faced by the Plaintiff and to provide adequate information

from which to determine the proper protective measures and equipment needed to adequately

protect the health and safety of the Plaintiff.

83.      The Defendant(s), their employees, representatives, agents, and/or contractors on their

own, failed to implement and adopt the appropriate testing, sampling and monitoring methods,

protocols, and/or procedures that they were legally mandated to perform to properly identify,

---

[13]Roger Clark, et al., "Environmental Studies of the World Trade Center Area After the September 11, 2001 Attack" (USGS Open File Report OFR-01-0129) (http://pubs.usgs.gov/of/2001/ofr-01-0429/>), p.4; Philip Landrigan, M.D., et al., "Heath and Environmental Consequences of the World Trade Center Disaster, "Envtl Health Perspectives 112(6):73139, 732 (May 2004), at p.16.

characterize, and quantify the nature and concentration of hazardous substances Plaintiff was exposed to at plaintiff's work locations.

84.     The Defendant(s), their employees, representatives, agents, and/or contractors on their own, incorrectly tested samples and analyzed and evaluated atmospheric conditions by the use of faulty tests.

85.     The analytical data, if properly evaluated, would have revealed that there were dangerously high concentrations of total volatile organic compounds, including but not limited to benzene, that far exceeded the protection limits provided by air purifying cartridge respirators. These levels required, instead, supplied air and self-contained breathing apparatus (SCBA).

86.     Benzene levels alone required the use of Level A or B personal protective equipment, including self-contained breathing apparatus and respirator fit tests, as required by the OSHA HAZWOPER standard, 29 CFR 1910.120.  Plaintiff should have been fully encapsulated to prevent dermal exposures to hazardous substances. Accordingly, the Plaintiff was not provided with timely or adequate warnings about the dangers that existed at her Work locations.

87.     Plaintiff was not provided with or required to use personal protective equipment and/or other safety equipment necessary to provide adequate protection against the dangers at plaintiff's Work locations. Among other things:

    a. Plaintiff was not provided with, or required to use, the necessary and legally mandated respiratory protection while working in and around the World Trade Center site and plaintiff's work locations;

    b. Plaintiff received inadequate equipment that was entirely inappropriate and failed to protect the Plaintiff's health and safety and comply with relevant legal requirements. For example, the Plaintiff was not provided with or required to use

supplied air systems or self contained breathing apparatus (SCBA), even when and where the atmospheric data, properly evaluated, revealed that there were dangerous levels and concentrations of total volatile organic compounds, including but not limited to benzene, that exceeded the legal permissible exposure levels, and that were far beyond the protection limits of any air purifying cartridge respirator;

c.      Plaintiff was never provided with, or required to use any personal protective equipment that met the requirements of Level A or B protection, including self-contained breathing apparatus and respirator fit tests, as required by the OHSA HAZWOPER standard, 29 CFR 1910.102;

d.      Plaintiff was never provided with or required to wear the legally mandated personal protective clothing that would prevent dermal exposures to the hazardous substances present at Plaintiff's work locations;

e.      Plaintiff was never provided with or required to wear the legally mandated eye protection to prevent injuries and/or absorption through the eye membrane of the hazardous substances present in Plaintiff's work locations;

f.      Plaintiff was never provided with or required the required decontamination facilities, equipment and training required to remove the hazardous substances that accumulated on their persons, clothing and personal possessions while working at plaintiff's work locations;

g.      Any safety equipment provided to Plaintiff by the Defendant(s), including but not limited to, personal protective equipment and respiratory protection, was not adequately selected, maintained, cleaned, and/or serviced. This included the

failure to provide appropriate replacement cartridges for respirators when necessary.

88.     Any respiratory protective equipment the Defendant(s) provided or recommended to Plaintiff was not properly fit tested or otherwise made suitable for use at the World Trade Center site. Among other things, Plaintiff did not receive the legally mandated quantitative and/or qualitative fit-testing and training as required by the Respiratory Protection Standard, 29 CFR 1910.134.

89.     Plaintiff was not provided with the legally mandated safety and health training to ensure plaintiff's safety at Plaintiff's work locations. Among other things:

   a.     Plaintiff was never provided with or required to attend any HAZWOPER and/or chemical safety and health training before or while performing work at Plaintiff's work locations;

   b.     Plaintiff was never provided with or required to attend any Hazard Communication training before or while performing work at the World Trade Center site;

   c.     Plaintiff was never provided with or required to attend any WTC site specific safety and health training before or while performing work at the Plaintiff's work locations;

   d.     Plaintiff was never provided with or required to attend any personal protective equipment training before or while performing work at Plaintiff's work locations;

   e.     Plaintiff was never provided with or required to attend any WTC site respiratory protection training before or while performing work at Plaintiff's work locations.

90.     The Defendant(s), their employees, representatives, agents, subcontractors and/or

contractors on their own, failed to implement and enforce any and all required environmental and

occupational safety and health laws, statutes, standards, regulations, rules and/or procedures,

including, but not limited to, requirements for the use of personal protective equipment,

respiratory protection and worker safety and health training.

91.     The Defendant(s), their employees, representatives, agents, and/or contractors on their

own, failed to implement the proper engineering controls, pollution abatement measures, and

other operational steps to prevent worker exposure to the myriad of hazardous substances present

in the areas where Plaintiff worked and was lawfully present at plaintiff's work locations.

92.     The Defendant(s), their employees, representatives, agents, and/or contractors on their

own, and in conjunction with other parties failed to adopt and implement the required medical

surveillance programs for the hazardous substances to which Plaintiff was exposed.

### Plaintiff's Injuries

93.     By reason of the foregoing, the Plaintiff was exposed to hazardous substances at

plaintiff's work locations.

### Consequential Damages

94.     In consequence of said exposure, Plaintiff sustained severe and permanent personal

injuries and/or disability; was rendered sick, sore, lame, and has been maimed and/or disabled;

and/or will be permanently caused to suffer pain, suffering, inconvenience, and other effects of

such injuries. In particular, plaintiff suffers from: G.E.R.D., chronic rhinosinusitis and shortness

of breath.  The foregoing is not an exhaustive list of injuries that may be alleged.

95.     In addition, Plaintiff incurred, and in the future will necessarily incur further, doctor,

hospital, physical therapy, and/or medical expenses in an effort to diagnose and be cured of said

injuries; have been unable to continue, engage in, and or attend to their usual vocations, and/or activities, and have suffered, and will necessarily suffer additional, loss of time and earnings from employment.

## Fear of Cancer

96.    Plaintiff has a reasonable fear of developing cancer as a result of said exposure. With reasonable probability, the prospective, feared, and anticipated consequences may be expected to flow from the past harm.

97.    Plaintiff will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the consequential damages.

98.    The degree of probability that the Plaintiff will develop cancers is such that there is a reasonable certainty that such cancers will develop at some future date, thus entitling Plaintiff to recover here for apprehended consequences that are not presently manifested.

99.    A rational basis exists between Plaintiff's exposure to the aforesaid dust, toxins, and contaminants, and Plaintiff's currently manifested fear of developing cancer in the future.

## Role of Defendant(s)

100.    On or about September 11, 2001, and continually thereafter, the Defendant(s), their employees, representatives, agents, and/or contractors were aware of the danger of exposure to dangerous substances, both known and unknown, in the air and dust at Plaintiff's Work locations. The Defendant(s) had actual or constructive notice of the dangerous and defective conditions existing at the Work locations. After September 11, 2001 the work locations were not reasonably safe.

101.    The Defendant(s) were negligent in allowing the unsafe condition to exist without warning and this was a substantial factor in causing plaintiff's injuries.

102.    The Defendant(s) knew of the unsafe conditions at Plaintiff's work locations long enough

before Plaintiff's injuries developed to have permitted them, in the exercise of reasonable care, to

have the unsafe conditions corrected and/or warned plaintiff and/or take other suitable

precautions. The Defendant(s) did not do so. To the extent that the Defendant(s) did not know of

hazardous conditions on site, in the exercise and use of reasonable care, they should have known

of same, and taken steps to correct the conditions and/or warn plaintiff.

103.    As set forth below, however, Defendant(s) failed to take adequate measures to inform the

Plaintiff of that danger, to take adequate steps to abate or reduce that danger, or to ensure that

Plaintiff was provided with the equipment, information, and training necessary for them to avoid

or minimize that danger, in violation of their legal duties.

### Causes of Action

### A. As and For A First Cause of Action: Pursuant to The New York State Labor Law

104.    Plaintiff repeats, reiterates and realleges each and every other paragraph contained in this

Complaint as if set forth more fully at length herein, and further allege the following.

105.    The Defendant(s), their employees, representatives, agents, and/or contractors had an

obligation, in accordance with Section 200 of the Labor Law of the State of New York, to

provide a reasonably safe place to work for persons lawfully performing work at Plaintiff's work

locations. That duty arose from the Defendant(s)' long term ownership, and/or management,

and/or control, and/or leasehold, and/or operation, and/or supervision of the work locations,

together with:

(a) the Defendant(s)' actual or constructive notice of the dangerous

condition of the Plaintiff's work locations, as set forth above;

and/or

(b) the Defendant(s)' control or supervision, and/or lack of

supervision over some aspects of the work performed at the

Plaintiff's work locations, as set forth above.

106.    The Defendant(s) violated its duty under Section 200 of the Labor Law by failing to

provide a reasonably safe place to work for persons lawfully performing work at their respective

buildings. Among other things, the Defendant(s) failed to ensure:

a.    that the Plaintiff was notified of the dangerous substances in the air, dust, and on

the surfaces of their respective buildings;

b.    that the Plaintiff was provided adequate personal protective equipment, including,

but not limited to: protective clothing, masks, respirators, and goggles;

c.    that the Plaintiff was provided other necessary work equipment, safety devices,

and/or apparatus, as well as cleaning supplies and decontamination equipment;

d.    that adequate workplace safety rules were in place – including rules requiring the

use of personal protective equipment – were issued, enforced, and complied with;

e.    that there was adequate monitoring air quality of their respective buildings before,

during and after the commencement of the Plaintiff's work at the site was

performed;

f.    that atmospheric contamination was minimized or avoided;

g.    that effective engineering controls were implemented at their respective buildings;

h.    that the conditions at their respective buildings and/or the Plaintiff's particular

work areas therein were subject to appropriate safety surveillance and/or

inspection;

i.    that the Plaintiff's exposure to dangerous substances, which The Defendant(s) knew or should have known would detrimentally affect the safety and/or health of Plaintiff, was adequately monitored.

107.    As a result of the Defendant(s)' violation of Section 200 of the Labor Law, the

Plaintiff was exposed to dangerous substances and suffered injuries, as set forth herein.

108.    The Plaintiff's injuries are the direct and proximate result of the carelessness,

negligence, gross negligence, wanton, and/or willful disregard and/or acts on the part of

the Defendant(s), without any fault, want, care, culpable conduct, and/or negligence on

the part of the Plaintiff contributing thereto.

109.    The Defendant(s) are liable for all of Plaintiff's damages, including, but not

limited to Plaintiff's noneconomic loss, irrespective of the provisions of the CPLR §1601,

because the Defendant(s) acted knowingly or intentionally, and in concert, to cause the

acts or failures which are a proximate cause of Plaintiff's injuries (see CPLR §1602(11))

and with reckless disregard for the safety of others (see CPLR §1602(7)).

### B. As and For a Second Cause of Action: Pursuant to Labor Law 241(6).

110.    Plaintiff repeats, reiterates and realleges each and every other paragraph contained

in this Complaint as if set forth more fully at length herein, and further allege the

following.

111.    As owner, and/or manager, and/or controller, and/or leaseholder, and/or operator,

and/or supervisor of the work locations in the immediate vicinity of the World Trade

Center site, the Defendant(s), at all relevant times, had a non-delegable duty under Labor

Law §241(6) of the State of New York, to ensure that all areas in which debris removal,

construction, excavation and/or hazardous substance abatement was being performed

were so constructed, shored, equipped, guarded, arranged, operated and conducted as to

provide reasonable and adequate protection and safety to the persons employed therein or

lawfully frequenting such places.

112.    The Defendant(s) violated its obligations under Section 241(6) of the Labor Law by failing to ensure that persons frequenting the premises or performing the Work at the work locations were provided with a worksite that was so constructed, shored, equipped guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to such persons.

113.    The Defendant(s) failed to comply with the applicable provisions and requirements of the New York State Industrial Code, including but not limited to §§ 23-1.5, 231.7, 23-1.8, 23-1.9, 23-1.25, 23-1.26, 23-2.1; Article 2, §27-a, Article 28, 12 NYCRR §820.4; General Municipal Law of the State of New York, §§205-e, 205-a; The Occupational Safety and Health Act, 29 U.S.C. §§ 654 et. Seq.; Occupational Safety and Health Administration, (OSHA) standards, including but not limited to, 29 C.F.R. §1910 Subparts H, I, J, K and Z, and specifically 29 C.F.R. §§1910.38, 1910.120, 1910.132-134; 1910.146; 1910.156; 1910.1001; 1910.1025; 1910.1027; 1910.1000, and 1910.1200, 29 C.F.R. §1926 Subparts C, D, E, F, G, H, I, J, and Z. and other applicable Federal, State, local, rules, regulations, ordinances and statutes.

114.    As a result of the Defendant(s)' violation of Section 241(6) of the Labor Law, the Plaintiff was exposed to dangerous substances and suffered injuries, as set forth herein.

115.    The Plaintiff's injuries are the direct and proximate result of the carelessness, negligence, gross negligence, wanton, and/or willful disregard and/or acts on the part of the Defendant(s), without any fault, want, care, culpable conduct, and/or negligence on the part of the Plaintiff contributing thereto.

116.     The Defendant(s) are liable for all of Plaintiff's damages, including, but not

limited to Plaintiff's noneconomic loss, irrespective of the provisions of the CPLR §1601,

because the Defendant(s):

        a.  violated a provision of Article 10 of the Labor Law, specifically Section

           241(6) (see CPLR 1602(8));

        b.  owed the Plaintiff a non-delegable duty of care (see CPLR 1602(2)(iv));

        c.  is vicariously liable for the negligent acts and omissions of any other

           and/or others who may have caused or contributed to the plaintiff's

           damages (see CPLR 1602(2)(iv));

        d.  acted knowingly or intentionally, and in concert, to cause the acts or

           failures which are a proximate cause of plaintiff's injuries (see CPLR

           p1602(11)); and acted with reckless disregard for the safety of others (see

           CPLR 1602(7)).

### C. As and For a Third Cause of Action: Based Upon Common Law Negligence

117.     Plaintiff repeats, reiterates and realleges each and every other paragraph contained

in this Complaint as if set forth more fully at length herein, and further allege the

following.

118.     Defendant(s) owed Plaintiff a common law duty to provide a reasonably safe

place to work for persons lawfully performing work at the work locations, as set forth

herein.

119.     Defendant(s) owed the Plaintiff a duty to exercise reasonable care in the actions it

undertook at and relating to the Work locations. This included, among other things,

providing information to the Plaintiff regarding the safety of the Work locations,

including the level of dangerous substances in the air and on the site, and the level of risk

arising from not properly using personal protective equipment, such as respirators.

120.    Defendant(s) violated its common law duty of due care with respect to the

Plaintiff in this case by acting with carelessness, negligence, gross negligence, wanton,

and/or willful disregard for the safety and rights of the Plaintiff. Among other things,

Defendant(s) violated its duties through the acts and omissions set forth herein.

WHEREFORE, judgment is demanded against Defendant(s) for compensatory

damages, jointly and severally with the other defendants in this case, in a sum to be

determined by jury.

## JURY TRIAL DEMAND

Plaintiff demands that all issues of fact in this case be tried to a properly empanelled

jury.

Dated: New York, New York
        July 13, 2007

                                            OSHMAN & MIRISOLA, LLP
                                            Attorneys for Plaintiff


                                    By: _____
                                            David L. Kremen (DK 6877)
                                            42 Broadway, 10th Floor
                                            New York, New York 10004
                                            (212) 233-2100


**Defendant(s)' addresses:**

CITY OF NEW YORK
 100 Church Street, 4th Floor
New York, NY 10007

2 BROADWAY LLC
 384 5th Avenue, 4th Floor
New York, New York 10018

COLLIERS ABR, INC
40 E. 52nd Street,
New York, New York 10022

BROOKFIELD FINANCIAL PROPERTIES, LP
3 World Financial Center
New York, New York 10281

BFP ONE LIBERTY PLAZA CO. LLC
3 World Financial Center
New York, New York 10281

BLACKMON- MOORING- STEAMATIC CATASTROPHE, INC
303 Arthur Street,
Fort Worth, TX 76107

HILLMAN ENVIRONMENTAL GROUP
1600 Route 22 E
Union City, NJ 07087

DEUTSCHE BANK TRUST CORPORATION
60 WALL ST
NEW YORK, New York 10005

DEUTSCHE BANK TRUST COMPANY
60 Wall Street
New York, New York 10005

BANKERS TRUST CORPORATION
60 Wall Street
New York, NY 10005

DEUTSCHE BANK TRUST COMPANY AMERICAS
60 Wall Street
New York, New York 10005

BANK OF NEW YORK TRUST COMPANY NA
One Wall Street
New York, New York 10286

BT PRIVATE CLIENTS CORP
280 Park Ave, 6W
New York, New York

TISHMAN INTERIORS CORPORATION

666 5th Avenue
New York, New York 10103

TULLY CONSTRUCTION COMPANY, INC
127-50 Northern Blvd
Flushing, New York 11368

TULLY INDUSTRIES, INC
127-50 Northern Blvd
Flushing, New York 11368

BATTERY PARK CITY AUTHORITY
1 World Financial Center, 24th floor
New York, New York

WFP Tower A Company L.P.
c /o Brookfield Properties
3 World Financial Center
New York, New York 10281

Docket No.:
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

========================================

IN RE COMBINED WORLD TRADE CENTER       21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE
LITIGATION (straddler plaintiffs)

========================================

MARIA LAZO,

                Plaintiff,

   - against -

THE CITY OF NEW YORK, 2 BROADWAY LLC
COLLIERS ABR, INC., BROOKFIELD
FINANCIAL PROPERTIES, L.P., BFP ONE
LIBERTY PLAZA CO. LLC, BLACKMON-
MOORING-STEAMATIC CATASTROPHE, INC.,
HILLMAN ENVIRONMENTAL GROUP, LLC,
DEUTSCHE BANK TRUST CORPORATION,
DEUTSCHE BANK TRUST COMPANY,
BANKERS TRUST CORPORATION,
DEUTSCHE BANK TRUST COMPANY
AMERICAS, THE BANK OF NEW YORK
TRUST COMPANY NA, BT PRIVATE CLIENTS
CORP., TISHMAN INTERIORS CORPORATION,
TULLY CONSTRUCTION CO., INC., TULLY
INDUSTRIES, BATTERY PARK CITY
AUTHORITY and WFP TOWER A. CO, .L.P.,

               Defendants.

========================================

### SUMMONS AND VERIFIED COMPLAINT

========================================

OSHMAN & MIRISOLA, LLP
Attorneys for: Plaintiff
*Office and Post Office Address, Telephone*
42 Broadway, 10th Floor
New York, New York 10004
(212) 233-2100

========================================

*Due and timely service is hereby admitted.*

*New York, N.Y. ................................., 2007*

*............................................................. Esq.*

*Attorney for ..................................................*

========================================